**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>JAMES CLAY BROCK,<br><br>　　　　　　　　Debtor(s).<br>_____<br>WILLIAM R. CESSNA, individually<br>and as Trustee of the Cessna<br>1993 Trust,<br><br>　　　　　　　　Plaintiff(s),<br><br>v.<br><br>JAMES CLAY BROCK, individually<br>and as Trustee of the James C.<br>and Dorothy E. Brock Family<br>Trust dated November 14, 1996,<br><br>　　　　　　　　Defendant(s).<br>_____ | Case No. 24-24919-B-7<br><br>Adversary No. 25-2021 |

**DECISION AFTER TRIAL**

**I.**

**Introduction**

Trial on claims alleged under 11 U.S.C. §§ 523(a)(2) and 523(a)(6) was held on January 26, 2026.[1]  David A. Diepenbrock and Carly M. Moran appeared for plaintiff William R. Cessna ("Plaintiff").  David A. Smyth appeared for defendant and chapter 7 debtor James C. Brock ("Defendant").

Plaintiff testified, Defendant testified, Defendant's son

---

[1] The Complaint identifies the § 523(a)(2) claim without distinction between §§ 523(a)(2)(A) and (a)(2)(B).  The trial brief filed on January 5, 2026, makes clear the § 523(a)(2) claim is a claim under § 523(a)(2)(A).

Randy Brock testified. The alternate direct testimony declaration of Shasta County Sheriff's Department Lt. Timothy Estes and its attached report were admitted into evidence without appearance by Lt. Estes upon the parties' stipulation.[2] Plaintiff's and Defendant's trial exhibits were all admitted into evidence in the absence of objections. Plaintiff's late-submitted Exhibit 17 was admitted into evidence by stipulation.

Plaintiff's *Request for Judicial Notice in Support of Trial Brief* filed on January 5, 2026, and *Plaintiff's Supplemental Request for Judicial Notice* filed on January 26, 2026, were granted in part and denied in part for the reasons stated on the record. Plaintiff's *Memorandum of Points and Authorities in Support of Motion for Judgment [FRCP, 52(c)]* filed on January 26, 2026, was denied for the reasons stated on the record. All evidentiary objections stated on the record are incorporated herein and made a part hereof by this reference.

Having heard and considered the testimony, observed the demeanor of the witnesses as they testified, read and considered the parties' trial briefs, and thoroughly reviewed and considered all of the evidence, the court issues its findings of fact and conclusions of law below. See Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052. If there are any conflicts between these written findings of fact and conclusions of law and the court's oral

---

[2] Lt. Estes testified about a report he prepared following an investigation he conducted into Defendant's financial activities after he was contacted out of concern by Plumas Bank manager Donna Hamilton. Ms. Hamilton suspected Defendant may be the victim of elder abuse due to irregular banking transactions and withdrawals of large amounts of cash Defendant reported he was sending to undisclosed third-parties.

statements on the record, these written findings of fact and conclusions of law control. <u>Playmakers LLC v. ESPN, Inc.</u>, 376 F.3d 894, 896 (9th Cir. 2004).

## II.

## Findings of Fact and Conclusions of Law

Plaintiff and Defendant are both octogenarians. Both reside in a small, close-knit community where they have lived for most, if not the entirety, of their lives. Plaintiff and Defendant differ significantly in their physical condition and mental acuity.[3]

Prior to events that led to this adversary proceeding, Plaintiff and Defendant were very close friends for over 40 years. They met when they worked together at a lumber facility where they often ate lunch together. They played music together, danced on what apparently was an impressive dance floor Defendant built at his house, and they generally socialized with each other and with each other's family for four decades.

Things changed in 2018 when Defendant was convinced beyond any doubt that he won a substantial cash price in a Spanish

---

[3] Plaintiff testified that he processes his own lumber, operates a meat packing business, and owned and operated a logging business for over thirty years. Defendant testified that he is skilled at operating and repairing machinery and tools; however, he left school before he finished the fourth grade, he can read but often does not understand all the words, he does not understand complex, technical or legal terms, his math and spelling skills are not good, and he suffers from long-term and some short-term memory problems. These differences are relevant to this decision.

- 3 -

lottery.[4] Although the dollar amount of the cash winnings changed because Defendant was given different numbers by lottery "agents" or "officials," Defendant believed he won either four million dollars, two-hundred fifty million dollars, or one billion dollars. Defendant believed he won so much money that he would "own the valley."

Defendant was told by lottery "agents" or "officials" that before he could collect his lottery winnings he had to pay expenses associated with the winnings. Defendant was also told these expenses had to be paid in cash sent in boxes to addresses the lottery "agents" or "officials" designated. Defendant paid these purported expenses with $85,000 of his own money. When that was not enough, Defendant obtained more money from Plaintiff that was also sent to lottery "agents" or "officials."

The parties stipulated that between February 5, 2018, and July 6, 2018, Plaintiff transferred $317,500 to Defendant. The stipulated dates and amounts of the transfers are as follows:

(1)   $ 15,000 on February 5, 2018;

---

[4] Defendant's son testified that his father's belief that he won a significant lottery cash prize was so firm and so unshakeable that his father would have terminated their relationship had he tried to intervene in his father's financial affairs or otherwise prevent his father from acting on his belief he was a lottery winner. Valuing his relationship with his father, and recognizing that his father needs assistance with daily living activities, Defendant's son testified that he chose to not intervene in his father's financial affairs. Defendant's son has moved in with Defendant and assists Defendant with daily living activities. The emotion in Defendant's voice and his demeanor as he testified also leaves the court with no doubt that Defendant truly, honestly, and whole-heartedly believed he won a substantial cash prize in a Spanish lottery. Of course, there was no lottery, Spanish or otherwise, and there were no lottery winnings. More on this later.

1     (2)    $100,000 on February 8, 2018;

2     (3)    $150,000 on February 15, 2018;

3     (4)    $  2,500 on March 5, 2018;

4     (5)    $ 25,000 on March 16, 2018;

5     (6)    $  5,000 on March 26, 2018;

6     (7)    $ 15,000 on May 22, 2018; and

7     (8)    $  5,000 on July 6, 2018.

<u>Witness Credibility & Additional Background</u>

On the issue of credibility, the court finds Defendant to be a very credible witness and the court believes Defendant's testimony. Defendant testified that his alternate direct testimony declaration is truthful and he would not include anything in the declaration that was untruthful or that would subject him to perjury. Defendant understood what perjury means.[5] More important is that Plaintiff vouched for Defendant's credibility. Plaintiff testified during trial that he has known Defendant to be an honest man his entire life and that he had never known Defendant to lie in 2018 or at any other time.

Although Plaintiff appeared to be a good and forthright man, his testimony on two critical points was inconsistent and contradictory. These points of contradiction also provide

---

[5] Plaintiff introduced prior deposition testimony regarding non-disclosure of personal property owned by Defendant's son and stored on Defendant's property or at Defendant's residence as evidence that Defendant and/or Defendant's son somehow lack credibility because the property was not disclosed in Defendant's bankruptcy schedules. The court gives this testimony no weight. Property owned by Defendant's son, regardless of where it is located or stored, is not property of Defendant's bankruptcy estate under 11 U.S.C. § 541(a) and therefore need not be disclosed in Defendant's bankruptcy schedules.

additional background for this decision.

Point one concerns Defendant's use of the money he received from Plaintiff. Plaintiff's trial testimony on this point is conflicting. Plaintiff initially testified during trial that Defendant did not tell him how the money was used. Plaintiff later contradicted himself and testified that Defendant told him the money was being used to "send in" to get lottery "winnings." Plaintiff's initial trial testimony on this point is also inconsistent with his prior testimony in an amended declaration filed in a May 2023 state court action Plaintiff filed against Defendant. The amended declaration was admitted into evidence without objection as Defendant's Exhibit D. Plaintiff testified in ¶ 4 of the declaration that Defendant told him "he needed the money to pay expenses for transaction under which he expected to receive a substantial monetary payment." For his part, Defendant testified convincingly during a deposition that he told Plaintiff the money was being used to pay lottery winning collection expenses. The transcript of Defendant's deposition was admitted into evidence without objection as Plaintiff's Exhibit 16.

Point two concerns collateral. Plaintiff testified that Defendant gave him deeds to three parcels of real property and that he relied on these deeds as collateral in the event he was not repaid by Defendant.[6] Plaintiff testified during trial and in ¶¶ 7-8 of his alternate direct testimony declaration that he asked Defendant for this collateral after the first two transfers

---

[6] Plaintiff testified that he did not consult a lawyer after he received the deeds, he did not have loan documents drafted, and he did not know what a deed of trust was.

1 of $15,000 and $100,000, respectively, and before the third
2 transfer of $150,000.  However, in ¶ 5 of the amended state court
3 declaration referenced above, Plaintiff testified he asked
4 Defendant for the three properties as collateral after the first
5 transfer of $15,000 and before the second transfer of $100,000.
6 Plaintiff also testified in ¶ 21 of his alternate direct
7 testimony declaration that he transferred the "money discussed
8 above [*i.e.*, the $317,500] *solely* as a personal accommodation to
9 a longtime friend." (Emphasis added).
10　　　Giving substantial weight to Plaintiff's unequivocal
11 endorsement of Defendant's life-long honesty and integrity, and
12 considering Plaintiff's inconsistent and contradictory testimony
13 on at least two critical issues, the court finds Defendant to be
14 the more credible witness overall.  Defendant's testimony is
15 consistent, credible, reliable, and probative and the court
16 believes Defendant.  The court gives Defendant's testimony
17 substantially more weight than it gives Plaintiff's testimony.

## The § 523(a)(2)(A) Claim

19　　　One of the elements Plaintiff must prove to prevail on the §
20 523(a)(2)(A) claim is justifiable reliance.  <u>Field v. Mans</u>, 516
21 U.S. 59, 74-75 (1995).  Plaintiff bears the burden of proving
22 this element by a preponderance of the evidence.  <u>Grogan v.
23 Gardner</u>, 498 U.S. 279, 291 (1991); <u>American Express Travel
24 Related Services Company Inc. v. Hashemi (In re Hashemi)</u>, 104
25 F.3d 1122, 1125 (1996) (stating that creditor must prove each
26 element of a § 523(a)(2)(A) claim by a preponderance), <u>cert.
27 denied</u>, 520 U.S. 1230 (1997).  Plaintiff has not met this burden.
28　　　Plaintiff has not established by a preponderance of the

evidence that he relied on the deeds (or on anything else) as collateral for repayment of the money transferred to Defendant. The evidence is clear that the parties did not contemplate collateral at the inception of the transfers and Plaintiff's conduct after he received the deeds is inconsistent with Plaintiff obtaining the deeds as security for repayment. More important is that contradictions and inconsistencies in Plaintiff's testimony about the timing of the purported request for collateral render the entirety of Plaintiff's testimony about reliance on the deeds as collateral suspect, not credible, and unreliable. But the most convincing and probative evidence that Plaintiff did not rely on the deeds (or anything else) as collateral for the money he transferred to Defendant is Plaintiff's own direct testimony that he transferred the entirety of the $317,500 to Defendant "*solely* as a personal accommodation to a longtime friend." (Emphasis added).

What is an accommodation or, more specifically, what is a "personal accommodation?" Blacks's Law Dictionary defines an "accommodation" as follows: "An arrangement or engagement made as a favor to another, not upon a consideration received. . . . The word implies no consideration." *Accommodation*, Black's Law Dictionary, (rev. 5th Ed., 1979); see also Svenhard's Swedish Bakery v. Bakery and Confectionary Union and Industry International Pension Fund (In re Svenhard's Swedish Bakery), 154 F.4th 1100, 1104 (9th Cir. 2025) (referring to Black's Law Dictionary for a common definition of "accommodation" as "[a]n arrangement or engagement made as a favor to another"); Corinthian Pharmaceutical Systems, Inc. v. Lederle Laboratories,

- 8 -

724 F.Supp. 605, 610-11 (S.D. Ind. 1989) (referring to Black's Law Dictionary for definition of "accommodation" to mean no expectation of consideration). Adding "solely" and "personal" into the context of the "accommodation" term highlights the "accommodation" testimony and reinforces the court's conclusion that Plaintiff gave Defendant the $317,500 as a favor-a personal favor-to a longtime friend whose honesty he did not question and without any expectation of or reliance on collateral.

So then, on what, if anything, did Plaintiff rely for the return of the money he transferred to Defendant? The weight of the evidence, primarily Defendant's prior deposition testimony, supports the conclusion that Plaintiff relied on Defendant's representations regarding the collection and sharing of lottery winnings for repayment. However, Plaintiff's reliance on these representations, even if misrepresentations, would not be justifiable.

"[J]ustifiable reliance is a subjective standard that looks to the qualities and characteristics of the particular plaintiff, the knowledge and relationship of the parties, and the circumstances of the particular case[.]" In re Robinson, 640 B.R. 741, 745 n.5 (Bankr. D. Nev. 2021). There generally is no duty to investigate *unless* there are "red flags." Field, 516 U.S. at 71-72. As the BAP explained in Obara v. AFC Cal, LLC (In re Obara), 2014 WL 2211768 (9th Cir. BAP May 28, 2014):

> The justifiable reliance standard generally does not entail a duty to investigate; a person may be justified in relying on a representation even if he might have ascertained the falsity of the representation had he made an investigation. However, a creditor's duty to investigate arises by virtue of suspicious circumstances. Thus, justifiable reliance does not exist where a creditor ignores red flags.

Id. at *10 (cleaned up); Wickman v. Ivar (In re Werner), 2019 WL 641411, *13 (9th Cir. BAP Feb. 13, 2019) ("[T]he justifiable reliance standard does not permit the plaintiff to ignore red flags that obviously call into question the truth of the debtor's representations regarding the transaction[.]"), aff'd,, 817 Fed.Appx. 432 (9th Cir., July 23, 2020).

Defendant's deposition testimony reflects that there were numerous "red flags" here that Plaintiff, a businessman of over thirty years who is in good physical health and mentally acute, should have investigated as suspicious but which Plaintiff deliberately chose to ignore because, as Plaintiff testified, how Defendant used the $317,500 was none of his business. For example, Defendant's assertion that he won a substantial cash prize in a foreign lottery should have triggered some suspicion for Plaintiff. Another "red flag" for Plaintiff should have been Defendant's explanation that lottery expenses had to be paid in advance before the lottery winnings could be collected. Another should have been that the pre-collection lottery expenses had to be paid in extremely large amounts of cash. And still another should have been that the cash to pay these pre-collection lottery expenses had to be sent to lottery "agents" or "officials." The point here is that Plaintiff intentionally ignored Defendant's suspicious activity and, in so doing, can not now establish that any reliance on Defendant's collection of lottery winnings for repayment was justifiable.[7]

---

[7]Although a subjective standard, when determining justifiable reliance the court may consider how far the purported reliance strays from what would be objectively reasonable. See Robinson, 640 B.R. at 745 n.5. Plaintiff's deliberate decision to ignore numerous "red flags" is alone sufficient to undermine

## The § 523(a)(6) Claim

Section 523(a)(6) excepts from discharge a debt for a willful and malicious injury. See 11 U.S.C. § 523(a)(6). As the Ninth Circuit explained in Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008):

> Section 523(a)(6) of the Bankruptcy Code provides that an individual debtor may not discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The malicious injury requirement is separate from the willful injury requirement. A willful injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.

Id. at 706 (cleaned up).

The court is not persuaded that Defendant deliberately or intentionally injured Plaintiff or that Defendant was substantially certain Plaintiff would be injured by his conduct. Quite the opposite. Defendant testified convincingly that he intended to provide Plaintiff with a benefit for the money he received from Plaintiff by sharing-perhaps splitting-his lottery winnings with Plaintiff. In other words, Defendant's intent was to reward-not harm-Plaintiff for helping him collect lottery winnings. This is not willful and malicious conduct.

---

any justifiable reliance here. Nevertheless, the court notes that Defendant's banking transactions involving large amounts of cash Defendant was sending to undisclosed third-parties caused Plumas Bank's manager enough concern to contact the Shasta County Sheriff's Department and report Defendant as a potential victim of elder abuse. These activities also caused Lt. Estes enough concern to initiate an investigation, contact family members, and report Defendant's activities to county Adult Protective Services.

## III.

## Conclusion

William Shakespeare said it best: "Neither a borrower nor a lender be; / For loan oft loses both itself and friend ..." (Hamlet, Act 1, Scene 3).

Based on the foregoing:

Judgment will be entered for Defendant and against Plaintiff with Plaintiff taking nothing on the claim under 11 U.S.C. § 523(a)(2)(A) in the First Cause of Action of the Complaint.

Judgment will be entered for Defendant and against Plaintiff with Plaintiff taking nothing on the claim under 11 U.S.C. § 523(a)(6) in the Second Cause of Action of the Complaint.

Defendant's debt to Plaintiff as alleged in the Complaint and as filed in Claim 1-1 arising from and based on the transfers referenced hereinabove is dischargeable and is discharged in Defendant's chapter 7 case.

Defendant is awarded costs as the prevailing party. A signed Bill of Costs must be filed by February 25, 2026.

If supported by Fed. R. Bankr. P. 9011, Defendant may file a motion for attorney's fees under 11 U.S.C. § 523(d). Any such motion shall be filed and served by March 18, 2026.

A separate judgment will issue.

**Dated:** February 18, 2026

Christopher D. Jaime, Chief Judge
United States Bankruptcy Court

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

David A. Diepenbrock
400 Capitol Mall 11th Fl
Sacramento CA 95814

David Ashley Smyth
3478 Buskirk Ave., #1000
Pleasant Hill CA 94523